Thank You, Your Honor. I'd like to reserve two minutes for rebuttal. Sure. Siobhan Sheridan Ayala on behalf of Petitioner Porfiria Gonzalez-Medina. May it please the Court. The first issue in this case is why the why the acts that Ms. Gonzalez-Medina suffered in Mexico are past persecution. And the fact that they are past persecution is dispositive of this case when coupled with the fact that Ms. Gonzalez cannot relocate in Mexico. First of all, she suffered strangling, a stake to her throat. She was threatened with death. Her daughter was also threatened with death. And she was attempted, a victim of attempted stoning by an angry mob. There were seven of them who arrived at the house where the confrontation happened with sticks and stones to attack her. Stoning has multiple meanings. Yes, it does, Your Honor. So in this case, you're talking about somebody who had stones thrown at her, not somebody who was being crushed by a pile of stones. Right, but that was quite possibly the intention. Is there any precedent that indicates that acts like this, offensive as they are, that acts like this necessarily or that evidence compels a conclusion that that amounts to past persecution? Stoning has, there's no indication that, or excuse me, I was not able to find anything in any case about stoning as an act of persecution, but it does date back to biblical times. But not of the kind that you're talking about here. I mean, stoning, as I understood it in biblical times, meant crushing with stones, not having rocks thrown at it. I mean, I doubt there's a kid in the country that hasn't had rocks thrown at them at some point in time. That's not persecution. Right. But, Your Honor, in the motion for judicial notice, we submitted evidence that stoning does occur in Mexico, and there is about six or seven articles that were submitted that stoning still does occur in Mexico. Yes, which means people are... In this case, doesn't the record actually show that a stone was thrown at her mother? I mean, it's one thing to talk in generalizations, but she didn't actually testify to that. She said that stones were thrown... She said a rock was thrown, right? She said that a number of people came to the house with stones and sticks. So the intention of the mob that came to greet her was perhaps to stone her and her mother. So whether or not that occurred is not necessarily what the intention was of what happened. We have to look at the fact that that actually does happen in Mexico. Counsel, let me ask you this. I think you've done a good job in your briefs establishing that this guy is a horrible guy. Yes. And whether he's throwing rocks at her or someone's throwing rocks at her mom, whatever, he's a really bad guy. I guess my concern about this case is that, unfortunately, there are a lot of bad guys, and there are a lot of bad guys who do a lot of bad things to their spouses or their girlfriends or boyfriends, for that matter. How do we distinguish this case from other domestic abuse cases, and how do we avoid a situation where, if we were to go your way, anytime someone makes credible allegations of abuse by a spouse or a partner, they get to stay in the United States. How do we separate your case from those cases? Well, that's a good question, Your Honor. The BIA has specifically found that victims of domestic violence, a matter of ARCG, who are unable to leave their partners, it is a social group. But that's not your client, because your client did leave her partner. She is not able to leave the partner. The fact that when she is with him, he still is after her. But she's left him. But she's not, because she... Only by her own doing. I mean, she lives some distance away from him. No, when she is around him, he has a death threat against her. Yes. You're saying, when she's around him. And my question is, isn't the evidence that she is, in fact, not around him, except when she goes to visit her daughter? They are still married. He refuses to divorce her. That's not the question I asked. That's not the question I asked. Are they physically next to each other? No, they are not. Okay, then. So, you've just identified a social group that doesn't include her, because they're not together any longer. Your Honor, in Hernandez v. Ashcroft, this court talked about the fact of a relationship very similar to this, when a relationship where the woman left the abuser and went back, and left the abuser, and went back. And they found that the cycle of violence... Don't go back. What compels her to go back? She's trying not to go back by trying to be in a different country. So, her desire to be in this country is simply consistent with her desire to be away from him, and she can be away from him without remaining in this country. Only if she has legal status. Oh, she can remain in this country only if she has legal status. She can stay away from him in this country. She thinks that maybe somebody is following her. There's no actual evidence of that. Nothing's ever happened to her someplace else. We cannot discount her first-person experience. She believed that someone followed her, and her brother identified the person that followed her as someone who was in an intimate way. Counsel, is there any evidence of anything having happened to her elsewhere? The expert opinion... No. I think the answer to that question is no. No, there's not. And the expert doesn't know the particulars of her situation, does he? No, and that's not necessary, actually, because what he stated... So there is no evidence of any harm she has suffered when she's away from him, and no evidence that she can't stay away from him. That's not true. Okay, what's not true about it? That she can't... there's no evidence that she can't... that she's safe away from him. That is not a true statement. There's no evidence to the contrary. How far away is her home? The record looked somewhat conflicting to me. How far away is her home or her family's home in Mexico from where Narcisco lives? It's a number of hours. It's approximately five hours away, and the gang, the Calvario gang, is active in the state of Guerrero. The immigration judge and the Board of Immigration Appeals, they cherry-picked the issue of the fact that Miss Gonzales can leave... can... excuse me, it's only a reasonable... excuse me, I apologize. She is only required to show that it is reasonable that she not relocate in Mexico, and the expert stated that if she were to relocate as a single woman, that she would be subject to possible extortion, kidnapping, she would be a target of sexual predators, traffickers, and so she cannot relocate without the protection of her family, and it's not reasonable to expect her family to relocate. Additionally, she has her daughter, and it's not reasonable to expect that she not have contact with her daughter, because when she has contact with her daughter, then Mr. Rabidon knows where she is. So those go to the reasonableness of relocation. Do you want to reserve the rest of your time? Yes, I do. Thank you. Good morning, Your Honors. Counsel, and may it please the Court, Rob Stalzer on behalf of the Attorney General. Your Honors, the problem in this case is simply the evidence is not there. It does not support the claim that she would like to make, and that is related to the past persecution, which only extended to the single incident in Mexico, and it also related to the issues of relocation and whether the government would be unwilling or unable to protect her. The evidence... Do we agree that you do not have substantial evidence that the government could protect her? Should we remand this? No, Your Honor, because the other dispositive issue in that case would be the reasonableness of On that issue, on relocation, the evidence establishes that at least she was able to go to her hometown, which was five or six hours away from Narciso's town, but also it's important to remember that the burden was on her during the entire proceedings to establish that she couldn't go anywhere in Mexico, and the evidence related to that particular question was simply generalized country conditions information stating that the gangs are everywhere, but even her own was a local gang, and he couldn't opine on whether or not the reach of the gang actually extended to all of Mexico, and that's why there is no compelling evidence that she couldn't relocate to another place in Mexico other than Narciso's hometown. There's no reason she should go back to Narciso's hometown, and that's why she cannot prevail on the withholding claim here, because there was no past persecution. I want to mention two other issues that just arose after briefing, and that was petitioner filed a 28-J letter citing Barajas Romero. This is the one central reason case saying that standard does not apply in withholding cases. Remand is not required here under Barajas Romero, simply because this isn't a nexus case. It wasn't a case where the board was ruling on Narciso's motive, or whether it was a mixed motive or not. That doesn't come into it. The issues here were past persecution, which she didn't establish because it was a single incident in Mexico of insufficient harm, and also because of the reasonableness of relocation and the lack of evidence relating to whether the government would be unable or unwilling to help her. Again, to meet that element, she simply provided country conditions statements and her own general statement, oh, I didn't think the police could help me. That's not enough. We have to have a reason to believe that the police wouldn't actually help her if she sought their help. And we just don't know whether that's true or not, particularly in her hometown, where her own expert testified that she could seek protection because her family's located there. And that, by the way, goes to her withholding claim and also the claim that hasn't been mentioned here yet, and that is the torture claim. Again, the evidence just wasn't there. If you want to say — I do have a general question about this case. You know, in the world of people that our country is trying to remove, I don't know why this lady is high on that list. Can you provide some background as to why we've had so much effort by the U.S. government to remove this lady? As a specific matter, I don't know, Your Honor. I'm simply assigned the case. I do know that she has multiple unlawful reentries, which is something that usually triggers some scrutiny. Other than that, I couldn't tell you specifically. There's no criminal record or — Not to my knowledge. Not suspected of being a bomb-maker or something like that. Not to my knowledge, Your Honor. Okay. Two other things I just want to respond to. One, with respect to the stoning issue, which arose during my colleague's argument, the specific exchange when Ms. Gonzalez testified was, so did Narciso ever throw rocks at you? And she replied, not me. Who did he throw rocks at? She says, my mom. And why would he throw rocks at her? She said, I don't know. This isn't a stoning, like the Court was in the biblical sense. They didn't come there to murder her. It seems like Narciso chased her off. In fact, and I do want to emphasize this point, Ms. Gonzalez's partner was asked, hey, what did Narciso say when he did it? And he said, I don't want to see you anymore, which is what distinguishes this from cases like the one Petitioner cites, Hernandez, in which we see the cycle of violence, where we see the abuser cannot escape the abused, and the abused won't escape the abuser. They keep coming back to each other. Here we have a case where they don't want to see each other anymore. She doesn't want to see him, and he doesn't want to see her, making this distinct, to go to your question before, Your Honor, from the ordinary domestic violence case. In terms of future, if we look at the cat claim, if we look at the possibility of torture on which, you know, doesn't she have some argument that how is she supposed to completely get away from him? Because they do have, I guess, a common there, in Mexico, and therefore, she needs the protection of the police, as anybody with a domestic violence issue, I suppose, would. And what is the evidence that she can get it? Well, the evidence that she can get it would be her own expert's testimony. He said that he thought that because her family was based in her hometown, that she could find help there. But again, that was speculative on his part, because the evidence wasn't there. Again, it was her burden to provide the evidence that she can't seek police protection, rather than DHS's burden to demonstrate that she can't. On those grounds, she provided generalized country conditions evidence, suggesting that the police are corrupt. Some police are corrupt in some places. But again, we need a reason to believe that she, in particular, would be I don't know. She didn't show that the Mexican government in general wouldn't help her. What about the local police in her hometown, Tliloapan? Again, the evidence just wasn't there. And it was her burden to provide that evidence, Your Honor, which is why she failed to establish that element, the inability or unwillingness of the government to protect her on the withholding claim and on the torture claim, which you just mentioned, whether a public official would acquiesce or consent or show willful blindness to her torture. The evidence just I look at the IJ's decision, and it emphasizes as the evidence to support the conclusion the government's taking action against violence, and violence is declining. It cites the same statement by the former President twice within a couple of pages, about a 42 percent decline in the murder rate in one province. And I go to look at what backs that up. I'm not sure there's very much that backs that up or very much you can draw from, and yet the IJ decides to cite that same evidence twice. Is that the best we have in terms of what the conditions are like in that province? I think the immigration judge was looking at the totality here, saying this is a mixed message. Because, of course, while violence has declined, it's still violent. But the issue there that the immigration judge is focusing on is whether a petitioner has met her burden to show that she's going to be the victim of violence because of Narciso, which the evidence didn't show that. Anything else, Judge Bucklow? No. All right, thank you for your time. Thank you, Reynolds. I just wanted to clarify that Mr. Robidon actually sought out Ms. Gonzalez when they, he sought her out when she went to see his, her daughter. So it's not a fact that they don't want to see each other because he sought to hurt her. I just wanted to talk... Where does the daughter live? The daughter lives with his mother, Ms. Robidon, Mr. Robidon's mother. I confess I may just be lost in the cast of characters. I thought the bad guy was somebody named Narciso. Yes, it's Narciso Robidon. Okay. Yes. And I just wanted to talk briefly about CAT because, Convention Against Torture, because there's two forms of relief that Ms. Gonzalez is eligible for, withholding of removal and Convention Against Torture. And under the Convention Against Torture, relocation is not her burden. It's not her burden to prove that she cannot relocate, but it's a, it's a factor for the court to consider under Maldonado versus Lynch. And one thing that the expert testified to, Mr. Tom Borman, was that when a gang member, because Mr. Robidon is a leader in a gang, which he testified to at AR-222, he, the expert said that the passage of time does not diminish a threat. So he has threatened her with death, and the fact that it has been a number of years does not diminish that she is still under a death threat by Mr. Robidon. Why? Why? Well, she testified, and I wanted to briefly speak about this if there's time, that in the United States, he abused her and he, based on the fact that he thought he was, she was his property and her, his slave. And there's four reasons why the abuse in the United States is actually relevant to, to the claim. One is the motive. The other is that it gives a context to the, the abuse that she's, the persecution that she suffered in Mexico. Another is that in Hernandez versus Ashcroft, the, the court called an abusive relationship a single and continuing entity. And with that, and I'm out of time. I'll give you, no, finish, finish your sentence. Okay, the last is that there is ongoing persecution that she suffered. She lost a tooth. She was physically deformed because of the abuse on her face, and she was also raped and conceived a child from the rape, which she has to live with for the rest of her life. Thank you, Your Honors. Thank you, counsel. This matter is submitted. We appreciate your argument.
judges: Clifton, Owens, Bucklo